UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

CLARA WRIGHT ET AL.                                      CIVIL ACTION

VERSUS                                                   No. 13-136

AT&T MOBILITY, LLC                                       SECTION I

ORDER AND REASONS

Before the Court is the motion[1] to remand and for attorney's fees and costs filed on behalf of plaintiffs, Clara Wright and Dennis Drury. Defendant, AT&T Mobility LLC ("AT&T"), filed an opposition,[2] and plaintiffs replied.[3] For the following reasons, plaintiffs' motion is **DENIED**.

*BACKGROUND*

Plaintiffs filed a petition for eviction in the 22nd Judicial District Court for the Parish of St. Tammany on December 17, 2012.[4] According to the petition, AT&T has occupied plaintiffs' property for more than eight years without paying rent.[5] Plaintiffs petitioned the state court for a rule to show cause as to why defendant should not be ordered to vacate the premises and, "[u]pon Defendant's failure to comply," for a writ of possession.[6]

---

[1] R. Doc. No. 5.
[2] R. Doc. No. 6.
[3] R. Doc. No. 12.
[4] R. Doc. No. 1-1, at 4.
[5] *Id.* According to defendant, the property is uninhabited, "in a raw state, without clearing, except for the construction of a properly maintained, zoned and permitted [cellular communications] tower." R. Doc. No. 6, at 1. Plaintiffs do not dispute this characterization.
[6] R. Doc. No. 1-1, at 5.

Defendant removed the case, asserting diversity jurisdiction pursuant to 28 U.S.C. § 1332 and federal question jurisdiction pursuant to § 1331. Plaintiffs admit diversity exists among the parties but they allege that the $75,000 amount-in-controversy requirement is not met. Plaintiffs contend that there is no federal question jurisdiction. Defendant argues that the amount in controversy is met and that the Court need not reach the second issue.[7] The Court agrees and limits its analysis to whether plaintiffs' allegations meet the amount-in-controversy requirement for removal.

### *STANDARD OF LAW*

A district court must remand a case to state court if, at any time before final judgment, it appears that the court lacks subject matter jurisdiction. 28 U.S.C. § 1447(c). The removal statute is strictly construed. *Sea Robin Pipeline Co. v. New Medico Head Clinic Facility*, No. 94-1450, 1995 WL 479719, at *1 (E.D. La. Aug. 14, 1995) (Clement, J.) (quoting *York v. Horizon Fed. Sav. & Loan Ass'n*, 712 F. Supp. 85, 87 (E.D. La. 1989) (Feldman, J.)). When challenged by a plaintiff seeking remand, the defendant attempting to establish removal bears the burden of proof. *Wilson v. Republic Iron & Steel Co.*, 257 U.S. 92, 97 (1921); *Sid Richardson Carbon & Gasoline Co. v. Interenergy Res.*, 99 F.3d 746, 751 (5th Cir. 1996).

The amount in controversy in actions seeking declaratory judgment or injunctive relief is the "the value of the right to be protected." *Leininger v. Leininger*, 705 F.2d 727, 729 (5th Cir. 1983); *Alonso v. Hillsborough Cnty. Aviation Auth.*, 308 F.2d 724, 727 (5th Cir. 1962). If the action does not involve an allegation of the value of the right, defendant must prove by a preponderance of the evidence that the value of the right sought by plaintiffs exceeds the statutory requirement either "(1)

---

[7]R. Doc. No. 6, at 5.

by demonstrating that it is 'facially apparent' that the value of the right is likely above $75,000, or (2) 'by setting forth the *facts* in controversy—preferably in the removal petition, but sometimes by affidavit—that support a finding of the requisite amount.'" *Luckett v. Delta Airlines, Inc.*, 171 F.3d 295, 298 (5th Cir. 1999) (emphasis in original) (quoting *Allen v. R & H Oil & Gas Co.*, 63 F.3d 1326, 1335 (5th Cir. 1995)); *see also St. Paul Reinsurance Co. v. Greenberg*, 134 F.3d 1250, 1253-54 (5th Cir. 1998) (applying the "facially apparent" standard in the context of a declaratory judgment action). "Where the 'facially apparent' test is not met, it is appropriate for the Court to consider summary-judgment-type evidence relevant to the amount in controversy as of the time of removal." *Davis v. State Farm Fire & Cas. Co.*, No. 06-560, 2006 WL 1581272, at *2 (E.D. La. June 7, 2006) (Vance, J.) (citing *Allen*, 63 F.3d at 1336).

If defendant meets its burden, then plaintiffs "must be able to show that, as a matter of law, it is certain that[they] will not be able to recover more than the damages for which [they have] prayed in the state court complaint." *De Aguilar v. Boeing Co.*, 47 F.3d 1404, 1411 (5th Cir. 1995). This is known as the "legal certainty test." *Id.* It is "not a burden-shifting exercise." *Id.* at 1412. The Fifth Circuit has suggested that this test may be satisfied by demonstrating that state law prevents recovery in excess of $75,000 or that the plaintiffs are somehow bound irrevocably to an amount under the federal jurisdiction limit. *Id.*

## DISCUSSION

Plaintiffs contend that the amount in controversy is $0.00 because they do not intend to rent their property to anyone after AT&T is evicted.[8] AT&T contends that the amount easily exceeds

---

[8]R. Doc. No. 12, at 5.

$75,000 because of the monthly rental value of the land and the value of the communications tower.[9] The Court finds that the monthly rental value of the land is sufficient evidence of the value of possession such that consideration of the tower's value is unnecessary.

Chief Judge Vance considered the removal of a summary eviction proceeding in *A. Levet Properties Partnership v. Bank One, N.A.*, No. 03-1708, 2003 WL 21715010 (E.D. La. July 21, 2003). She observed that, because summary eviction proceedings involve solely possession, courts cannot value "the right of possession based on future rents or past unpaid rents that might be claimed in another proceeding." *Id.* at *3. In determining the value of possession, however, courts may look to "the difference between the rent received from [a] new tenant and the rent [plaintiff] would have received from [defendant]." *Id.* Alternatively, if defendant "were unable to pay rent under the lease, then possession would give [plaintiff] the ability to re-lease the premises to another tenant, and the value of possession would be the rent [plaintiff] could collect from a new tenant." *Id.*

In their state-court petition, plaintiffs state that they "no longer desire to lease their property as a telecommunication site."[10] Similarly, in their reply, plaintiffs contend that the "object of the litigation" is to "remove the liability associated with an unauthorized occupant from non-contracted use of land."[11] While evaluating the monetary value of possession in this context may be difficult in the abstract, the Court has been provided with two documents related to the parties' negotiations that provide a helpful rough estimate of the value of the right of possession from the parties' perspectives. The first document is a lease that was signed by defendant–but not plaintiffs–before

---

[9]R. Doc. No. 6, at 3-4 & n. 1.
[10]R. Doc. No. 1-1, at 4.
[11]R. Doc. No. 12, at 3.

-4-

a notary on August 31, 2010[12]. The second document is an email from plaintiffs' counsel to defendant's counsel sent on September 4, 2012, a few months before plaintiffs filed their petition.[13] The parties do not dispute the propriety of considering these documents as evidence. *See Hammel v. State Farm Fire & Cas. Co.*, No. 06-7470, 2007 WL 519280, at *4 (E.D. La. Feb. 14, 2007) (Vance, J.) (" Several courts have held that [Fed. R. Evid. 408(a)] does not prohibit the use of a settlement offer as relevant evidence to determine the amount in controversy so long as it appears to be a reasonable estimate of the plaintiff's claim.") (citing *Wilson v. Belin*, 20 F.3d 644, 651 n. 8 (5th Cir. 1994)).

The lease that was signed by defendant provides for a monthly rent of $1,800 for a twenty-year "initial term," subject to defendant's right to terminate the agreement with 60 days' notice and a payment of three months' rent.[14] The email from plaintiffs' counsel to defendant's counsel provides, in full:

> Proposed terms:
>
> Past rent due from June 9, 2004 at the rate of $2500/month, until paid.
>
> If Cingular purchases the cell tower for the sum of $200,000, monthly rent going forward will be $1800/month.
>
> If Cingular does not purchase cell tower, monthly rent going forward will be $3,000/month.
>
> Additional terms regarding taxes, maintenance, use of tower by other parties, length of lease, options to renew, etc. will be discussed after the stated terms, above, are agreed upon.[15]

---

[12]R. Doc. No. 12-1.
[13]R. Doc. No. 6-2.
[14]R. Doc. No. 12-1, at 2-3, 13.
[15]R. Doc. No. 6-2.

According to plaintiffs, this email reflects an "analysis by Plaintiffs [that] placed the fair market value for future rental of the land at $1800 per month."[16]

Plaintiffs argue that a lease's rental rates cannot be used to establish the minimum amount in controversy.[17] Defendant correctly asserts, however, that potential rental rates are evidence of the value of possession.[18] Here, plaintiffs state that the fair market rental value of the property is $1,800 monthly,[19] which is consistent with defendant's proposed lease. Plaintiffs currently do not receive any rent from defendant.[20] If defendant were evicted, plaintiffs' economic position would improve in that they would be able to collect roughly $1,800 monthly indefinitely.[21] *See A. Levet Props.*, 2003 WL 21715010, at *3 ("[I]f [defendant] were unable to pay rent under the lease, then . . . the value of possession would be the rent [plaintiff] could collect from a new tenant."). Even if plaintiffs prefer not to rent the property, this preference reflects that possessing the property without renting it is worth even more to plaintiffs than these monthly rent estimates.[22]

Plaintiffs additionally argue that defendant attempts to use a "non-existent lease" to meet its burden. The Court need not determine whether the lease, signed by defendant but not plaintiffs, would be sufficient to prove the property's possession value at this stage. Plaintiffs' own settlement

---

[16]R. Doc. No. 12, at 4.
[17]R. Doc. No. 5-2, at 6.
[18]R. Doc. No. 6, at 3.
[19]The Court notes that plaintiffs' alternative estimate, which did not require a $200,000 purchase up front, places the fair market value at $3,000 monthly. Even using plaintiffs' lower figure, however, the end result is the same.
[20]R. Doc. No. 1-1, at 6; R. Doc. No. 6, at 3.
[21]At a monthly rate of $1,800, approximately 3.5 years of payments would yield $75,000, not including any payments associated with the communications tower. The nature of the property and defendant's proposed "initial" 20-year lease term suggest contracting parties would generally contemplate a lease term in excess of 3.5 years.
[22]R. Doc. No. 6, at 3.

negotiation email serves as an independent indication of the value of the right of possession. It also indicates that the monthly rent suggested by defendant was a reasonable estimate of plaintiffs' claim. *See Hammel,* 2007 WL 519280, at *4.

## *CONCLUSION*

The parties' lease negotiations indicate the fair market value of possession is between $1,800 and $3,000 monthly. Plaintiffs have not provided any reason for the Court to believe that this monthly rate will decrease or become unavailable over time. Considering the nature of the underlying property, which is not disputed at this stage, the evidence presented, and the parties' arguments, the Court finds that it is more likely than not that the value of possession in this case meets the amount in controversy requirement.

Accordingly,

**IT IS ORDERED** that the motion is **DENIED**.

**IT IS FURTHER ORDERED** that plaintiffs may present their abstention argument in a timely motion.

New Orleans, Louisiana, April 10, 2013.

_____
**LANCE M. AFRICK
UNITED STATES DISTRICT JUDGE**